[Crim. No. 2537. First Dist., Div. One. Mar. 27, 1950.]

THE PEOPLE, Respondent, v. DONALD E. HICKOK,
Appellant.

Todd & Todd and Gordon W. Mallatratt for Appellant.

Fred N. Howser, Attorney General, David K. Lener, Deputy Attorney General, Francis W. Collins, District Attorney, and Thomas F. McBride, Deputy District Attorney, for Respondent.

PETERS, P. J.—By an amended information defendant was charged with a violation of section 288a of the Penal Code, and with a prior conviction of and service of a term for manslaughter. He admitted the prior conviction, but pleaded not guilty to the other charge. At his trial before a jury he offered no evidence on his own behalf. He appeals from the judgment of conviction and from the order denying

his motion for a new trial. The appeal was originally dismissed for failure to file briefs, but, upon motion, the remittitur was recalled and appellant allowed to file briefs. (*People* v. *Hickok*, 92 Cal.App.2d 539 [207 P.2d 620].)

The basic facts are not in dispute. On April 17, 1946, the prosecutrix was a high school girl 17 years of age. Appellant was a physiotherapist with an office in Richmond. He was also a Sabbath School teacher and elder in a church attended by the prosecutrix and her family. The prosecutrix was a member of the church class taught by appellant, and her family and that of appellant were well known to each other. Prior to April 17, 1946, the prosecutrix, usually accompanied by a high school girl friend, frequently visited appellant's office for social and professional reasons. On the day in question, the prosecutrix and her girl friend visited the office of appellant on their way home from school. When the girls arrived, only appellant was in the office. The three engaged in general conversation, and finally began to discuss hypnotism. Appellant offered to try and hypnotize the two girls. By word suggestion he hypnotized them and placed them on a treatment table in his office. Both girls testified that they were aware of what was going on, but were unable to move. Appellant then carried the friend to an adjoining room and placed her on a treatment table there. He returned to where the prosecutrix was lying. He then placed his finger down the girl's throat, but, apparently because of her hypnotized condition, she did not gag. When his finger was removed, her teeth, apparently as the result of reflex action, clamped together. Appellant then tried to place his sexual organ in the mouth of the girl. The girl testified that "It didn't go beyond my teeth because my teeth were clamped together, but it was inside of my lips, in my mouth." Appellant then attempted to pry the jaws of the prosecutrix apart when he was interrupted by the return of the girl friend to the room where these acts occurred. The girl friend did not see appellant exposed, and was not aware of what had occurred. The prosecutrix was aware of what was happening, but kept her eyes closed during the entire occurrence. After the girl friend returned to the room the appellant first told the prosecutrix that she would not remember what had occurred, and then "awakened" her.

The prosecutrix did not tell her family or her girl friend what had occurred, but the next day reported the affair to a woman who was active in the church. The woman immediately

reported the charge to the church pastor. A day or two later the woman and the minister confronted appellant with the girl's story. Appellant readily admitted hypnotizing the two girls, but claimed that the balance of the story was an illusion. He agreed to a meeting with the girl and the two adults, and several days later met with them in the study of the church. At this meeting the minister asked the prosecutrix to repeat her charges. She started to do so, but before she came to the act charged, appellant interrupted her with the statement: ''Well, let's spare her the details. . . . Let's spare the girl this embarrassment.'' A general discussion then followed in which appellant refused to deny or to admit having committed the acts charged by the prosecutrix, even after the minister told him that a failure to deny the charges would be interpreted as an admission of guilt. The appellant asked the minister what he would do if the charges were true, and, when the minister refused to commit himself, then promised to resign from the church and to leave town if all present would agree to say nothing to anyone about the incident. The minister refused to make any such promise, and refused appellant's request that he be permitted to talk to the girl alone.

For a short time after the meeting in the minister's study, appellant remained in Richmond and continued to participate in church affairs, and then he and his family moved away. Nearly two years after April 17, 1946, an information was filed, and on February 14, 1948, defendant appeared before a committing magistrate for preliminary examination. Admittedly, appellant was not then represented by counsel. He voluntarily agreed to testify at the preliminary, and the record of his testimony then given, over objection, was read into the evidence at his trial in the superior court. The record shows that at the preliminary defendant admitted that the two girls had visited his office on the day in question, and that he had then hypnotized them. He expressly admitted that he then attempted to commit the act charged against him, but stated that he had been unsuccessful because the prosecutrix had kept her teeth tightly closed. He pleaded not guilty, and was held to answer. He did not testify, nor produce any evidence on his own behalf, at the trial.

On this appeal but two points are made, first, that defendant was not informed of his right to counsel at the preliminary and that this deprived him of due process of law, and second,

that there was no violation of section 288a of the Penal Code. Neither contention is sound.

 There can be no doubt that there is a constitutional and statutory duty imposed on the magistrate to inform the accused that he is entitled to be represented by counsel at a preliminary examination. Article I, section 13, of the California Constitution provides that: "In criminal prosecutions, in any court whatever, the party accused shall have the right . . . to appear and defend, in person and with counsel," while section 858 of the Penal Code provides that: "When the defendant is brought before the magistrate upon an arrest, either with or without warrant, on a charge of having committed a public offense, the magistrate must immediately inform him of the charge against him, and of his right to the aid of counsel in every stage of the proceedings." (See, also, *People* v. *Avilez,* 86 Cal.App.2d 289, 294 [194 P.2d 829].)

There can also be little doubt but that the duty to inform the accused of such right, in some cases at least, is part of the due process guaranteed by the Fourteenth Amendment to the United States Constitution. (*Gibbs* v. *Burke,* 337 U.S. 773 [69 S.Ct. 1247, 93 L.Ed. 1686]; *Townsend* v. *Burke,* 334 U.S. 736 [68 S.Ct. 1252, 92 L.Ed. 1690]; *Uveges* v. *Pennsylvania,* 335 U.S. 437 [69 S.Ct. 184, 93 L.Ed. 127]; see, also, *Cherrie* v. *United States,* 179 F.2d 94.)

The question in the present case is not as to the existence of such right, but whether the record shows that appellant was deprived of the right. The record of the preliminary examination shows the following:

"The Court appointed Gertrude R. Dinsmore to take down the testimony and proceedings in the examination, and thereupon the defendant Donald E. Hickok having been so brought before the said Justice of the Peace for preliminary examination upon the charge of felony, to-wit: Violation of Section 288a of the Penal Code of the State of California, proceedings were had and testimony taken as hereinafter fully set forth.

"(The defendant was duly arraigned and informed as to his rights.)"

Mr. McBride, the Deputy District Attorney, then stated:

"It is my understanding from talking to the defendant this morning and prior to coming here, that it was his wish to take the stand and to testify here this morning for the purpose of the preliminary hearing. Mr. Hickok before you do take the stand, if that is your desire, it is my duty to instruct you on the law applicable to this matter. This is a criminal proceed-

ing. You are the defendant. You need not testify unless you so desire. You have a constitutional immunity against testifying in such matters. No one has threatened you that I know of, and no one will threaten you in order to induce you to testify. No one has promised you or can promise you anything for your testifying. If you testify, you must testify voluntarily. You must do so under oath like any other witness. What you testify to will be taken down by the shorthand reporter and in the event you are held to answer to the Superior Court, may be used there. Knowing those things to be true, Mr. Hickok, is it your desire now to take the stand?

"THE DEFENDANT: Yes."

It will be noted that the record shows that appellant was "duly arraigned and informed as to his rights." While it is true that the reporter did not take down the exact words of the committing magistrate, but merely summarized what had then occurred, it is apparent that if appellant was "informed as to his rights" he must have been informed of his right to counsel, as that is one of his legal "rights." It is incumbent upon an appellant to show error by the record. There is, of course, a presumption of regularity of the proceedings. (*People* v. *O'Neill,* 78 Cal.App.2d 888 [179 P.2d 10].) If appellant believed that he had not been legally committed, he had the legal right to attack the proceedings by motion in the superior court. (Pen. Code, § 995.) Section 996 provides that if such a motion is not made, the accused is precluded from thereafter raising the point. No such motion was here made. While failure to make such a motion would perhaps not cure a failure to afford an accused a constitutional right, if such defect appeared in the record, a failure to make such a motion certainly precludes the appellant on appeal from contending that the record showing that he was informed of his rights is incorrect. (*In re Rogers,* 91 Cal.App.2d 394 [205 P.2d 667].)

A case very closely in point is *People* v. *Rebolledo,* 93 Cal. App.2d 261 [209 P.2d 16]. Rebolledo was arraigned before a magistrate on charges of having violated section 288 of the Penal Code. He had an interpreter, but no counsel. The record, as in the instant case, showed that he was informed of his "legal rights." Unlike the present case, Rebolledo then moved the superior court to set aside the information. He was subsequently convicted, and appealed from the judgment of conviction and from the order denying his motion to set aside the information. One of his main grounds of appeal

was that he had not been informed of the charges against him or of his right to counsel. In affirming the judgment and order appealed from, the court stated (p. 263) : ''The contention of appellant that he was not advised of charges against him, of his right to counsel and to cross-examine witnesses, is without merit. The record shows that at the arraignment the complaint was read to him through an interpreter and he was informed of his legal rights. It is presumed that when the magistrate advised appellant of his 'legal rights' at the arraignment, he also advised him of his right to the aid of counsel in every stage of the proceedings (Pen. Code, § 858) ; that he was entitled to produce witnesses on his own behalf and to be confronted with the witnesses against him in the presence of the court. (Pen. Code, § 686; Code Civ. Proc., § 1963, subd. 15.) It was not necessary that appellant be represented by counsel at the preliminary examination (*People* v. *Campos,* 10 Cal.App.2d 310, 320 [52 P.2d 251] ; *People* v. *Greene,* 80 Cal.App.2d 745, 748 [182 P.2d 576] ), however, he had been advised of that right and was given ample opportunity to secure the services of an attorney if he so desired.''

Another case quite similar to the instant one is *People* v. *Greene,* 80 Cal.App.2d 745 [182 P.2d 576]. At page 747 appears the following :

''Defendant thereafter, on August 20th, was taken before the committing magistrate and arraigned. According to the minutes of that court, which were received in evidence at the trial, the defendant was 'duly informed of the nature of the charge against him and of all his legal rights.' The preliminary hearing was set for August 21st. On that day, defendant came into the magistrate's court, without counsel, and the judge thereof stated to the defendant: 'I understand you want to waive your preliminary hearing.' Answer by defendant: 'That is correct.' The Court: 'In order to do so you must be informed that when you take the stand and testify, anything that you say here in this court may be held against you in this court, or in any other court hereafter. You do not have to testify unless you want to, but you may do so if you want. With that understanding, do you want to testify?' Defendant: 'Yes sir.' The defendant then testified in more detail about the facts before related. He was held to answer. This evidence was offered against the defendant in the superior court and counsel for him objected and moved to strike that evidence on the ground that 'defendant was compelled to be a witness against himself . . . that he was not repre-

sented by counsel . . . and that his constitutional rights had been violated.' The motion was denied and on this appeal defendant claims error of the trial court in its ruling.

''The record not only indicates that defendant was informed of his rights according to section 858 of the Penal Code, at the arraignment, but he was later warned that any statement he might give at the preliminary hearing might be used against him. (Pen. Code, § 1323.) Although the question propounded by the committing magistrate might indicate that the magistrate was of the belief that the defendant was *waiving* a preliminary examination, the facts indicate from the testimony taken that a *preliminary examination* was being held, and the evidence produced did show probable cause. . . .

''In *People* v. *Brooks,* 72 Cal.App.2d 657, 660 [165 P.2d 51], in construing Penal Code, section 859a and Penal Code, section 860, this court stated that it is not necessary that a defendant be represented by counsel before the committing magistrate, unless he enters a plea of guilty, or unless he waives the preliminary examination. Since the proceeding had was a preliminary examination, the presence of counsel representing the defendant was not mandatory. The record nowhere shows that defendant desired the services of counsel or sought a continuance for that purpose. After defendant secured counsel, which was before his arraignment in the superior court, no motion was made questioning the validity of the proceedings in the committing magistrate's court. In fact, it was not questioned until the proffered evidence relating to his testimony at the preliminary hearing was presented during the trial of the action.

''Section 995 of the Penal Code provides that the information must be set aside, *upon defendant's motion,* when it appears that before the filing thereof defendant had not been legally committed by a magistrate. Section 996 of the Penal Code provides that if the *motion* to set it aside is not made, the defendant is precluded from afterwards taking the objections mentioned. Since counsel for defendant failed to make such a *motion,* and failed to address himself to the discretion of the court in this respect, he is now foreclosed from raising the objection suggested. (See, also, *People* v. *Harris,* 219 Cal. 727 [28 P.2d 906], and cases there cited.) We perceive no error of the trial court in its ruling on the admissibility of the testimony of defendant taken at the preliminary examination.''

Under the circumstances here appearing, and under the authority of the above cases, it must be held that appellant has failed to show that he was deprived of any legal right.

█ The second contention of appellant is that the evidence fails to show a violation of section 288a of the Penal Code. That section provides: "Any person participating in the act of copulating the mouth of one person with the sexual organ of another is punishable by imprisonment in the state prison for not exceeding fifteen years." The theory seriously urged by appellant is that, since the evidence admittedly shows that the prosecutrix had her teeth tightly clenched, a violation of the section did not occur. To state the contention is to refute it. The lips constitute the entrance to, and are part of, the mouth. Admittedly, the evidence shows a penetration beyond the lips of the prosecutrix. Cases such as *People* v. *Angier,* 44 Cal.App.2d 417 [112 P.2d 659], and *People* v. *Coleman,* 53 Cal.App.2d 18 [127 P.2d 309], are not here applicable. In those cases there was no penetration—here there was an insertion into the mouth beyond the lips. The degree of penetration is a false factor. Any penetration of the mouth, no matter how slight, constitutes a violation of the section. (*People* v. *Milo,* 89 Cal.App.2d 705 [201 P.2d 556].)

The statutes dealing with the crime against nature and rape expressly provide that "Any sexual penetration, however slight" is sufficient to constitute the defined crimes. (Pen. Code, §§ 287 and 263.) These portions of the statutes have been frequently applied by the courts. (*People* v. *Lindley,* 26 Cal.2d 780 [161 P.2d 227]; *People* v. *Howard,* 143 Cal. 316 [76 P. 1116]; *People* v. *George,* 91 Cal.App.2d 537 [205 P.2d 464]; *People* v. *Stangler,* 18 Cal.2d 688 [117 P.2d 321].) While section 288a contains no such express admonition, it is obvious that such a provision is necessarily implied by the terms of the section. What is prohibited is the copulation of the mouth of one person with the sexual organ of another. Such prohibited act is accomplished by any prohibited penetration of the mouth, regardless of the degree of that penetration.

The judgment and order appealed from are affirmed.

Bray, J., and Schottky, J. pro tem., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 24, 1950. Carter, J., voted for a hearing.